

IN THE
TENTH COURT OF APPEALS

No. 10-13-00025-CR

CHAD MICHAEL MUSGROVE,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 77th District Court
Limestone County, Texas
Trial Court No. 12832-A

O P I N I O N

Chad Michael Musgrove was convicted of capital murder and sentenced to life in prison. TEX. PENAL CODE ANN. § 19.03 (West Supp. 2012). Prior to the jury trial on the capital murder charge, another jury was impaneled to determine Musgrove's competency to stand trial. The jury did not find that Musgrove was incompetent. This appeal involves only the jury's refusal to find Musgrove incompetent to stand trial, thus a review of the facts of the capital murder trial is not necessary. Because the evidence is

both legally and factually sufficient to support the jury's verdict, we affirm the trial court's judgment.

**COMPETENCY TO STAND TRIAL**

An appellate court measures the propriety of the competency verdict based on the evidence before the jury at the time of the verdict under the relevant legal standard set out in article 46B.003(a) of the Code of Criminal Procedure.  TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (West 2006); *Morris v. State*, 301 S.W.3d 281, 291 (Tex. Crim. App. 2009).  That standard is as follows:

> (a) A person is incompetent to stand trial if the person does not have:
> (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or
> (2) a rational as well as factual understanding of the proceedings against the person.

TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (West 2006).  If a jury makes the determination of incompetency to stand trial, the trial court shall require the jury to state in its verdict whether the defendant is incompetent to stand trial.  *Id*. art. 46B.052 (West Supp. 2012).

The statute sets out the factors experts use to evaluate whether a defendant is incompetent to stand trial.  TEX. CODE CRIM. PROC. ANN. art. 46B.024 (West 2006).  The Court of Criminal Appeals has stated that some of those factors are also helpful to the fact-finder in determining the broader question of competency.  *Ex parte Lahood*, 401 S.W.3d 45, 53 (Tex. Crim. App. 2013); *see Morris*, 301 S.W.3d at 286 n.10.  These factors

Musgrove v. State                                                                                              Page 2

include whether a defendant can (1) understand the charges against him and the potential consequences of the pending criminal proceedings; (2) disclose to counsel pertinent facts, events, and states of mind; (3) engage in a reasoned choice of legal strategies and options; (4) understand the adversarial nature of criminal proceedings; (5) exhibit appropriate courtroom behavior; and (6) testify. *Ex parte Lahood*, 401 S.W.3d at 53; *Morris*, 301 S.W.3d at 286 n.10; *see also* TEX. CODE CRIM. PROC. ANN. art. 46B.024(1) (West 2006). A person is presumed to be competent, and the burden is on a criminal defendant to prove incompetency by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2006); *Ex parte Lahood*, 401 S.W.3d at 54.

In two issues, Musgrove contends the evidence is both legally and factually insufficient to support the jury's refusal to find Musgrove incompetent to stand trial.[1]

**LEGAL SUFFICIENCY**

A defendant's claim that the jury's refusal to find him incompetent to stand trial—a determination which he has the burden to prove—is similar to an affirmative defense. *Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013). Thus, when reviewing the legal sufficiency of the evidence to support a refusal to make a finding on which the defendant had the burden of proof, we use the modified *Sterner* method of review as adopted by the Court of Criminal Appeals. *Matlock v. State*, 392 S.W.3d 662,

---

[1] The State argues that Musgrove has not preserved these issues for our review. However, in criminal cases, sufficiency of the evidence issues need not be preserved for appellate review. *See Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004).

669 (Tex. Crim. App. 2013); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). That is, when an appellant asserts that there is no evidence to support a refusal to find him incompetent, we are to construe the issue as an assertion that the contrary, in essence that he was incompetent, was established as a matter of law. *Matlock*, 392 S.W.3d at 669; *City of Keller*, 168 S.W.3d at 827. We first search the record for evidence favorable to the jury's refusal to find incompetency, disregarding all contrary evidence unless a reasonable factfinder could not. *Id*. If we find no evidence supporting the refusal to find the appellant incompetent, we then determine whether the contrary, incompetency, was established as a matter of law. *Id*. Only if the appealing party establishes that the evidence conclusively proves he was incompetent to stand trial and "that no reasonable jury was free to think otherwise," may we conclude that the evidence is legally insufficient to support the jury's refusal to find him incompetent. *Matlock*, 392 S.W.3d at 670 (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009)).

We now turn to the first step: searching the record for evidence favorable to the jury's refusal to find Musgrove incompetent and disregarding all contrary evidence unless a reasonable fact-finder could not. After Musgrove presented evidence to support his burden, the State called Dr. William Lee Carter, a psychologist, to the stand. Dr. Carter evaluated Musgrove for approximately four hours and conducted a variety of tests. He concluded that Musgrove was competent to stand trial. He noted in his

report, which was introduced into evidence, that Musgrove's full scale IQ was 105 and well within normal limits. Musgrove displayed good internal organization and his mental illness did not diminish his cognitive capacity. Musgrove was able to identify his attorney by name and knew that he was charged with Capital Murder. He understood courtroom procedures and was aware of the roles of the various people involved in courtroom proceedings. He could identify and explain the duties of a jury but also realized a judge could determine the fate of a defendant. Dr. Carter also noted that Musgrove was willing and able to defer to his attorney regarding legal decisions but wanted input into the process. Dr. Carter concluded that Musgrove was able to confer with his attorney regarding legal matters, even if his point of view differed from what others might think. Musgrove understood that he did not have to testify in court unless he and his attorney agreed that it would be advantageous to do so, understood proper courtroom decorum, and was capable of following protocol.

During his testimony, Dr. Carter agreed that Musgrove was mentally ill, but Musgrove's ability to think and problem solve was normal and he had the capacity to carry on a meaningful conversation. Dr. Carter also agreed that Musgrove was delusional in that Musgrove thought he was Jesus; but that "delusional" and "incompetent" were not the same. There was no question for Dr. Carter that Musgrove had some delusional beliefs but that did not mean he was incapable of rational thought.

Musgrove argues that we cannot consider Dr. Carter's testimony in our legal sufficiency review because Dr. Carter failed to consider "decisional competency"[2] when making his determination. This concept is not listed as a statutory factor experts must consider when deciding competency, *see* TEX. CODE CRIM. PROC. ANN. art. 46B.024 (West 2006), and has not been accepted as a factor by any court in Texas by which to review the sufficiency of the evidence. Further, no one questioned either expert[3] about whether he considered "decisional competency" in his determination of competency or incompetency. Thus, we decline Musgrove's invitation to exclude Dr. Carter's testimony simply because he did not, as far as the record shows, consider the concept of "decisional competency."

After searching the record for evidence favorable to the jury's refusal to find Musgrove incompetent and disregarding all contrary evidence, unless a reasonable factfinder could not, we find that there was evidence to support the jury's refusal to find Musgrove incompetent. Thus, we need not determine whether the contrary was established as a matter of law. Musgrove's first issue is overruled.

FACTUAL SUFFICIENCY

In a factual sufficiency review of a refusal to find a defendant incompetent, an appellate court views the entirety of the evidence in a neutral light, but it may not usurp

---

[2] Musgrove cites to two articles—Richard J. Bonnie, *The Competence of Criminal Defendants: A Theoretical Reformulation*, 10 BEHAVIOR SCIENCES AND THE LAW 291 (1992) and Richard J. Bonnie, *The Competence of Criminal Defendants: Beyond Dusky and Drope*, 47 MIAMI L. REV. 539 (1993)—for this concept.

[3] Dr. Carter or Dr. Mark, Musgrove's expert.

the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Matlock*, 392 S.W.3d at 671; *Meraz v. State*, 785 S.W.2d 146, 154 (Tex. Crim. App. 1990). Therefore, an appellate court may sustain a defendant's factual sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id*.

Musgrove contends that because he had the delusion that he was Jesus, heard voices in his head that sounded like Carrie Underwood which persisted from the time of his arrest to the time of trial, and was not asked by Dr. Carter whether he was talking to or helping his attorney, the evidence was factually insufficient to support the jury's refusal to find him incompetent to stand trial. He also contends that the findings of his own expert, Dr. Mark, show that the verdict is so against the great weight of the evidence as to be manifestly unjust. We do not agree with Musgrove.

Dr. Carter evaluated Musgrove for about four hours. He testified that although Musgrove was mentally ill, Musgrove's ability to think and problem solve was normal and he had the capacity to carry on a meaningful conversation. Dr. Carter also testified that Musgrove was delusional in that Musgrove thought he was Jesus; but that "delusional" and "incompetent" were not the same. Dr. Carter further testified that

although Musgrove had some delusional beliefs, that did not mean Musgrove was incapable of rational thought.

Further, Dr. Mark's determination of incompetency was less than convincing. Dr. Mark visited with Musgrove for about 30 to 40 minutes. He testified that Musgrove had the capacity to understand the charges against him and the potential consequences, to understand the adversarial nature of the criminal proceedings, and to exhibit appropriate courtroom behavior. As to the other factors, his findings were not definitive. Dr. Mark used terms to describe Musgrove's capacity regarding these other factors as "problematic," "distracted," and "may be interfered with."

Musgrove argues that his case is much like the cases of *Nunez v. State* and *Aragon v. State*. *Nunez v. State*, 942 S.W.2d 57 (Tex. App.—Corpus Christi 1997, no pet.); *Aragon v. State*, 910 S.W.2d 635 (Tex. App.—Beaumont 1995, no pet.). We find those cases to be distinguishable. In *Nunez*, all the experts agreed that the defendant was incompetent to stand trial; thus, the jury's "verdict of competency" was found to be so against the great weight and preponderance of the evidence as to be manifestly unjust. *Nunez*, 942 S.W.2d at 60-61. Likewise, in *Aragon*, the State took no issue with the observations, opinions, or findings of the defendant's witnesses as to his incompetency to stand trial, instead relying solely on the defendant's *own* testimony that he was competent. *Aragon*, 910 S.W.2d at 641-642. The court of appeals found the evidence to be factually insufficient to support the jury's "verdict of competency." *Id.* at 642. In the case at

hand, expert opinions of incompetency and competency were introduced. It was within the jury's province to determine which expert opinions to believe.

Reviewing all the evidence in a neutral light, we do not find the jury's verdict to be so against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. Musgrove's second issue is overruled.

CONCLUSION

Having overruled each issue on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Justice Davis concurs without a separate opinion)
Affirmed
Opinion delivered and filed October 31, 2013
Publish
[CRPM]